Blandford, J.
1. The bill of exceptions was signed by the judge on February 10. Entered upon it is the following statement: “ Served B. F. Harrell, attorney for T. T. Ligón, administrator (defendant in error), this day personally with copy of the above and foregoing bill of exceptions,” dated February 20, and signed by one of the attorneys for the plaintiffs in error. On February 23, the same attorney indorsed upon the bill of exceptions an affidavit that he served a copy of the bill of exceptions on the attorney for the defendant in error on February 20. The bill of exceptions was filed February 24.
Held, that this was a substantial.compliance with the law, and although the affidavit was made after the expiration of ten days after the signing by the judge, yet, having been made before the filing, and showing that the service was in fact made w'ithin the time allowed by law, the writ of error will not be dismissed.
2. Exceptions to the admission of evidence which do not show that objections thereto was made, or do not state upon what ground it was made, cannot be considered.
3. The verdict and decree are warranted by the evidence.
Judgment affirmed.
*74 THE LAW’S DELAYS.
The following is a summary of the report of the special committee of the American Bar Association, appointed to consider and report whether the present delay and uncertainty in judicial administration ■can be lessened, and if so, by what means.
We think that the following should be deemed fundamental maxims of government, in respect of the judicial establishment:
I. —The Constitution should provide for one permanent court of last ■resort in the State, to which appeals should be so limited as not to exceed the capacity of the court to hear and decide them as they arrive. And if it should ever become so overburdened as to be obliged to adjourn for a term without hearing all the cases in readiness, further appeals ■should thereupon be limited until the court can clear off the arrears, together with the current business. Temporary commissions should ,not be resorted to in courts of last resort.
II. —The Constitution should also provide not only for permanent inferior courts, equal to the business of ordinary times, but for temporary commissions, as occasion may arise, to clear off arrears in the courts of first instance.
III. —The methods of procedure should be as direct and simple as possible; without an unnecessary distinction, or an unnecessary proceeding.
IV. —The number and distribution of the judges, the frequency of the courts, and the simplicity of the procedure should be such, that, when the witnesses are in the State, the most strongly defended lawsuit may be terminated in the court of first instance within a few months, and that even should the case go to the utmost limit of appeal within the State, it may be terminated within a year at most, from its ■beginning in the court of first instance to its ending in the court of last resort.
The conclusions at which we have arrived are that the PRESENT DELAY AND UNCERTAINTY IN JUDICIAL ADMINISTRATION CAN BE LESSENED,' AND BY MEANS AS FOLLOWS :
L — Summary judgment should be allowed upon a negotiable instrument or other obligation to pay a definite sum of money at a definite •time, unless an order of a judge be obtained, upon positive affidavit and 'reasonable notice to the opposite party, allowing the defendant on derms to interpose a defense.
*75 II. — In an ordinary law suit the methods of procedure should be simple and direct, without a single unnecessary distinction or detail; and whatever can be done out of court, such as the statement of claim and defense, should be in writing and delivered between the parties or their attorneys, without waiting for the sitting of a judge.
HI. — Trials before courts,¡whether with or without juries, should be shortened, by stricter discipline, closer adherence to the precise issue, lees irrelevant and redundant testimony, fewer debates, and no personal altercation.
IV. —Trials before referees should be limited in duration, by order made at the time of appointment.
V. —The postponement of a trial should not be allowed, because of the engagement of counsel elsewhere, nor ever except in strict con. formity to rules previously made by the judges, and for reasons of fact known to the court or proved by positive affidavit.
VI. —The record of a trial should contain shorthand notes of all oral testimony, written out in longhand and filed with the clerk; but only such parts should be copied and sent to an appellate court as are relevant to the point to be discussed on the appeal, and if more be sent the party sending it should be made to pay into court a sum fixed by the appellate court, by way of penalty.
VII. —A motion for or against a provisional remedy should be decided within a fixed number of days, and if not so decided the remedy should fail. A week is time enough for a judge to hold such a motion under advisement. If he cannot within seven days make up-his mind that a provisional remedy should stand it ought to fall. In all other cases a decision within a fixed period should be required of every judge and every court, except a court of last resort.
VIII. —The ordering of new trials should be restricted tocases where it is apparent that injustice has been done.
IX. —Whenever a court of first instance adjourns for a term, leaving unfinished business, the executive should be not only authorized but required to commission one or more persons, so many as may be necessary, to act as judges for the time being and finish the business. Such temporary judges should be commissioned in all courts except the court of last resort.
X. —Whenever a court of last resort adjourns for a term, leaving un *76 finished business, further appeals to it should be so limited as to bring the cases before it speedily down to the limit of its ability.
XI —The time allowed for appealing should be much shortened. One month, or at most two, should seem to be enough in all cases.
XII. —Greater attention must be paid to the selection of judges; without which no other reform, however good in itself, can succeed.
XIII. —The law itself should be reduced, so far as possible, to the form of a statute.
XIV. —Statistics of the litigation, in the courts of the United States and of each state, should be collected and published yearly, that the people may know what business has been done, and what is waiting to be done.
In conclusion, we are obliged to admit that most of the blame for the delay and unceitainty which we have been discussing rests upon the profession of which we are members, in both its branches, whether on the bench or at the bar. We are a host in numbers; we have influence direct and indirect, greater than that of any other profession or class of men in the country; we are part and parcel of the judicial establishment; we know best the laws of the land as they are, and we should know best what they ought to be; we can make ourselves heard and heeded in every legislative hall, in every executive chamber and on every bench of justice; and we have given pledges, not less binding because not expressed in words, that the functions with which the State has endowed us shall be used to promote justice, not alone by assisting suitors in their private controversies as they arise, but by doing our best to make the occasions of such controversies as few as possible, and the issue thereof as speedy and as near the right as we can make them. That we have failed so long to redeem these pledges is no reason for failing longer. Let us redeem them now
All of which is respectfully submitted.
August 19, 1885.
David Dudley Field.
John F. Dillon.
MEMORANDUM.
The Committee appointed at the meeting of 1881 consisted of the two signers of the foregoing Report, together with Mr. Phelps of Vermont, *77 Mr. Broadhead of Missouri, and Mr, Merrick of the District of Columbia. Messrs. Phelps and Broadhead left the country and Mr. Merrick died, before a meeting of the Committee. A skeleton of the Report was sent to the absent members as early as July, but no answer was received from them until after the adjournment of the Association. A note of Mr. Phelps, and a letter from Mr. Broadhead were finally received, as follows:
American Bar Association, 1885 :
The undersigned, a member of the special Committee appointed by 'the Association to report upon the subject of the delay and uncertainty in judicial administration, desires to append to the Report of said Committee, as drawn up and submitted by its Chairman, the following note:
I have examined and fully concur in the foregoing Report, both in its reasoning and conclusions, excepting only so far as the same advocates and recommends a codification of the existing common law. In ¡so much of the Report I am unable to concur.
E. J. Phelps.
London, August 8, 1885.
Bordeaux, France, August 6, 1885.
Hon. David Dudley Field :
Dear Sir — The skeleton of your Report to the American Bar Association has just reached me. I have read it with great pleasure, and hereby authorize you to sign my name to the Report as one of the •Committee. No doubt the greatest delay in the trial of causes arises from disputed questions in regard to the admissibility of testimony. .You intimate, and I think correctly, that the judge should not be .authorized to hear argument on those questions. It would perhaps be too radical a change to say that the decision of the trial judge should not be held as ground for error, except where testimony is offered which it would be against public policy to admit, as in case of the wife against the husband, or of persons convicted of infamous crimes; but there is much wisdom in leaving it to the discretion of the judge to let the jury have all the facts which he may think pertinent. I am willing to take your very able Report just as it is.
I am most respectfully yours,
Jas. O, Broadhead.
P. S. — Should Judge Dillon suggest any changes which you approve, *78 I have so much confidence in his judgment that you may consider meas agreeing to them.
J. 0. Broadhead.
Memoranda of the proceedings of the American Bar Association-at its meeting in August, 1885, at Saratoga, New York, when the foregoing Report was presented:
Article I. With the consent of the Committee these words were-stricken out, namely: “And if it should ever become so overburdened as to be obliged, to adjourn for a term without hearing all the cases in-readiness, further, appeals'should thereupon be limited until the Court-can clear off the arrears together with the current business.”
E. F. Bullard, of New York, moved to append these words:
“In cases.where appeals are not allowed, of course, a judge of the- • Appellate Court may allow such an appeal, in such case, if he shall-certify to probable cause.”
Article V. With the consent of the Committee, this article was-stricken out.
Article VI. With the consent of the Committee, amended so as to read thus : “The^record of a trial, in every court in which official stenographers are injattendance, should contain shorthand notes of all .oral testimony, which notes, if tfie court shall so order, shall be written out-in longhand and filed with the clerk; but, etc., etc.,” (the rest as before.)-
Article VIL Wm. Allen Butler, of New York, moved to strike out these words, namely: “ A week is time enough for a judge to hold such ■ motion under advisement. If he cannot within it make up his mind, that a provisional remedy should be maintained, it ought to fail.”
Article X. With the consent of the Committee,'.this article was stricken out.
Article XIII. Simeon E. Baldwin, of Connecticut, moved to append these words, namely: “ Or such other written form as may have equal authority with a statute.”
This article was postponed until next meeting of the Association.
Article XV. R. D. Benedict moved to add as Article XV: “A diminution of jury trials.”
*79 On motion of Benj. A. Willis, of New York, the following resolution was passed:
Resolved, That the conclusions„and recommendations of the Report, •on the delay and uncertainty of judicial administration, be approved; ■and that five thousand copies of the Report be printed, with the appendix, and distributed by the Secretary among the members of the .American Bar Association.
On motion of Geo. G. Wright, of Iowa, the following additional •resolution was passed :
And be it further resolved, That it shall be the|duty of the members -of the General and Local Council in each- State to bring this Report and its recommendations to the, attention and consideration of the Executive •and Legislative Assembly thereof, and to urge upon them the earliest •and most respectful consideration.
Edward Otis Hinkley, Secretary.
48 N. Charles Street, Baltimore.
As a basis for its work, the Committee sent out a circular containing eight questions, and received answers from thirty-nine persons •representing thirty States and the District of Columbia. These questions and answers are appended. The answers are arranged alphabetically by States, and are somewhat condensed.
QUESTIONS.
I. How many judges of Courts of Record are there in your State ?
II. How many lawyers are there ?
III. What is the average length of a defended lawsuit from its beginning in the Court of'first instance to its end in the Court of last resort ?
IV. What is the average expense in costs and counsel fees of such ■lawsuit to each party ?
V. How many appeals are allowed in the same suit ?
VI. How many volumes of reported cases are annually published, ■ ¡and how many decisions are reported in the last volume of each Court ?
VII. What is the number of affirmances and reversals reported in 4bis last volume ?
*80 VIII. Is there any delay or uncertainty in the judicial administration of your State, and if so, what in your opinion is the cause, and! what is the remedy ?
ANSWERS OF GEORGIA’S REPRESENTATIVES.
A. R. Lawton, of Savannah.
I. There are about twenty-nine Courts of Record in Georgia, counting each judicial circuit as separate ; one Supreme-Court, which is only a “Court for the Correction of ErrorsSuperior Courts,” which are nisi prius Courts of general jurisdiction, and “City Courts.” Then we.have County Courts, “Courts of Ordinary,” and Justice Courts.
VI and VII. No other “Reports” are published than those of the-“Supreme Court” (Court of Error), and there are two (2) .volumes in each year. In the last volume there are one hundred and sixty-three-cases reported. Of these, one hundred and twelve were affirmed and fifty-one reversed.
VIII. For answer to the eighth enquiry, I beg-to refer you to an “open letter” of Walter B. Hill, of Macon, Georgia, in the June number of the “ Century Magazine.” I think the reasons are there well stated-
ly. B. Hill, of Macon.
II. My information is that there are in Georgia about fifteen hundred lawyers.
Ill and IV. My estimate would be that- defended lawsuits in Georgia last about four years, on an average, and that the cost, the average-expenses in costs to each party, is from $30 to $50. There are no-“costs” for attorneys or counsel in Georgia.
V. There are two appeals allowed in cases in the Justice Court p one appeal allowed from the County Court to the Superior Court, and one appeal allowed from the Ordinary’s Court. However, I suppose that this question is broader in its import than this answer indicates. [I omitted to state that all cases may go the Supreme Court.J The question probably means to ask how many times the same case may be tried* over. Strictly, there is no limit to this as long as there is an error-committed in the Court having original jurisdiction, and as long as the “Supreme Court” can be satisfied of such error. However, we know that after three or four verdicts in the Court below, the Supreme Court, becomes very impatient of bills of exception, and sometimes exercisesihe power conveyed by paragraph 2, section 218 of the Code, of making a final disposition of the case.
*81 I am gratified that you consider the open letter in the “ Century ” worthy of being referred to the great oracle of law reform. I think that the causes of the law’s delay mentioned in that letter operate in Georgia; and, in addition to them, there is another cause which I did not mention, because it has been removed in a great many States which have adopted the code of procedure formulated by Mr. Field himself. It seems to me that the legal history of Georgia presents a very striking anomaly. As early as 1799 our “Judiciary Act” provided that in all cases at common law it should ."only be necessary that the plaintiff should set out his cause of action “plainly, fully and distinctly.” This «wept away much of the technicality of common law pleading, and was far in advance of legislation in other States. In 1863 Georgia adopted a Code, the second part of which is a civil Code and an attempt at a codification of the general principles of civil law. This fact does not seem to have become known in the United States. The reason probably is: “ inte?' arma silent leges." Of course, at the time the Code was adopted it was not expected that information in regard to it would reach the north, or, if it did, that it would excite any considerable interest. At any rate, I have recently read an address on codification by so scholarly a lawyer as Governor Hoadly, in which he asserts that the only State in the Union having a Civil Code is California, which has adopted the Civil Code proposed in New York by Mr. Field. In view, therefore, of the fact that the legislation of Georgia in 1799 and 1863 has anticipated every other State in the direction of law reform, it strikes me as a singular anomaly that we are behind three-fourths of the States of the Union in abolishing the distinction between legal and equitable pleading. I myself know of one case that was litigated for ten years on the sole question whether or not a certain defense was to be urged in a legal or equitable forum, and I have seen numerous cases where parties who had filed bills in equity, which were dismissed on demurrer, lose a year by being compelled to set up precisely the same cause of action in a suit at law.
Inasmuch as we have combined the Courts of law and equity in the same Superior Court, it seems absurd that these things should happen. The retention of the distinction between law and equity pleading is, I think, certainly one of the causes of legal delay in Georgia. I sincerely trust that we may be ,able to secure the adoption in our State of that simple and rational system of pleadings and procedure which received its crowning indorsement by its adoption in England in 1873.